404 S.E.2d 92

**Susan ZANKE, Plaintiff
Below, Appellant,**

v.

**Ronald F. ZANKE, Defendant
Below, Appellee.**

**No. 19525.**

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 8, 1991.

Decided April 2, 1991.

**2**

Jay T. McCamic, McCamic & McCamic, Wheeling, for plaintiff below, appellant.

David J. Sims, Wheeling, for defendant below, appellee.

PER CURIAM:

This case is before us on the appeal of Susan Britt Zanke, the plaintiff below, from an order of the Circuit Court of Ohio County, which reduced the amount of accumulated alimony arrearage owed her by Ronald F. Zanke, the defendant below, and terminated the defendant's future alimony obligation.

The parties were married on November 30, 1972, and cohabited as husband and wife for thirty-six months. They were divorced on May 20, 1976. As part of the divorce, the husband was ordered to pay $130 per month in alimony to the wife, which he did for three months. There is evidence that the parties saw each other occasionally over the intervening years and may have discussed the alimony arrearage. No formal action to enforce the order was brought by the wife, nor was an action to modify brought by the husband.

In 1987, the husband received an award of approximately $75,000 in a personal injury lawsuit. On May 24, 1988, the wife filed a petition for a contempt order and for judgment for the arrearage of $18,070.

A hearing was held on the petition before the family law master, who filed his report on January 4, 1989. He recommended that the husband be found in willful contempt of a prior court order and that the wife be granted a decretal judgment in the amount of $16,250.[1]

The husband filed a petition for review of the recommendations of the family law master on January 13, 1989. He then filed a petition for modification, seeking termination of his alimony obligation. The wife filed a response requesting a hearing, which was held on April 17, 1989.

The hearing was rather brief. It established the date of the divorce, the amount of alimony set in the final decree, and the fact that payments were made for three months. It also revealed that the wife had lived in Lexington, Kentucky, for several years before returning to the Wheeling area. She stated that she had asked about payments on several occasions, but that the husband had indicated that he had no money. At the time of the hearing, she was working as a clerk in a florist shop.

The husband described his financial problems and stated that his share of the personal injury award had already been spent. He did indicate that the award included a $20,000 component, which he would not receive until he reached his sixtieth birth-

---

1. The family law master arrived at this figure by applying a ten-year statute of limitations. As we discuss more fully *infra*, we find under W.Va.Code, 38-3-18, that this is the correct time period.

day in about eight years. He claimed that his wife had told him sometime after the divorce that she did not want any alimony payments.

The circuit court, in its final order, entered a judgment in favor of the wife in the amount of $8,125, but terminated her right to receive alimony in the future. The court offered no specific reasons for cutting the family law master's back alimony recommendation in half or for terminating the wife's future alimony.[2]

## I.

The wife first assigns as error the circuit court's reduction of the judgment recommended by the family law master from $16,250 to $8,125. We hold that the circuit court incorrectly reduced the accrued alimony and remand the case for a determination of the actual amount due the wife.

 It is well established in West Virginia that when a provision for periodic payments of alimony is made in a divorce decree, these installments become decretal judgments as they become due, as we held in Syllabus Point 1 of *Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 (1987):

> "Matured installments provided for in a decree, which orders the payment of monthly sums for alimony or child support, stand as 'decretal judgments' against the party charged with the payments."

*See Sauls v. Howell,* 172 W.Va. 528, 309 S.E.2d 26 (1983); *Korczyk v. Solonka,* 130 W.Va. 211, 42 S.E.2d 814 (1947); *Holcomb v. Holcomb,* 122 W.Va. 293, 8 S.E.2d 889 (1940).

 A related question is what period of time will foreclose the enforcement of such decretal judgments. This point was discussed in *Korczyk v. Solonka, supra,* where a decree for support of $40 per month was ordered in 1929. No payments were made, and in October of 1945, a judgment was obtained in the circuit court for $11,464.20, including interest. When a suit was filed to sell the debtor's real estate, the trial court certified several questions to this Court, including whether the ten-year period for enforcement of judgments contained in W.Va.Code, 38–3–18 (1923),[3] applied. In Syllabus Point 3 of *Korczyk,* we said that it did:

> "The limitation provided in Code, 38–3–18, applied to a decretal judgment payable in installments, commences to run when each installment becomes due, as to the part of said judgment then payable."

*Korczyk* acknowledged that some jurisdictions utilized laches as a bar to this type of suit, but rejected this approach stating: "[W.Va.] Code, 38–3–1, 2, provide that decrees for the payment of money shall have the same effect as a judgment. Enforcement of such decretal judgment can be barred by the statute of limitations, but its enforcement may not be barred by laches." 130 W.Va. at 218, 42 S.E.2d at 819. (Citations omitted).

The trial court here was apparently of the view that equitable considerations could be utilized to reduce the back alimony, noting this language taken from *Goff*: "[A]bsent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a circuit court is with-

**2.** The relevant language of the court's order states:

> "The Court is of the opinion that there are enumerable judicially cognizable circumstances set forth herein which justify the modification of alimony. While most of these are in favor of the defendant, the Court concludes that there was a decree of alimony, some of which should be paid. Given all of the circumstances set forth herein, the Court is of the opinion that Eight Thousand One Hundred Twenty-five Dollars ($8,125) should be paid by the defendant to the plaintiff pursuant to the petition.

> "Furthermore, the Court is of the opinion the alimony should be terminated pursuant to the defendant's petition which will forego additional hearings and delay."

**3.** W.Va.Code, 38–3–18, reads, in pertinent part:

> "On a judgment, execution may be issued within ten years after the date thereof. Where execution issues within ten years as aforesaid, other executions may be issued on such judgment within ten years from the return day of the last execution issued thereon, on which there is no return by an officer or which has been returned unsatisfied."

out authority to modify or cancel accrued alimony or child support installments." Syllabus Point 2, in part.[4]

■ However, it is important to understand that the fraud or other cognizable circumstance which will authorize the circuit court to modify or cancel accrued support payments must relate to the procuring of the *original award.* The *Goff* rule does not apply to facts that develop later which could be used to support a petition to modify the award. There is no claim in this case that the original support decree was procured by fraud or other judicially cognizable circumstances.[5]

■ In *Sauls v. Howell, supra,* we recognized the continued validity of *Korczyk* and held that such decretal judgments would authorize the issuance of a suggestion under W.Va.Code, 38-5-10 (1923). Under W.Va.Code, 38-3-18, a judgment may remain alive after the ten-year period if the judgment creditor seeks issuance of an execution within the ten-year period.[6] Should this judgment remain unsatisfied, the creditor can obtain additional executions in a like manner to keep the judgment alive. Conversely, however, if the ten-year period is allowed to run without an execution be-

ing issued in favor of the payee spouse, the judgment dies a statutory death, incapable of revival. *See* W.Va.Code, 38-3-18; *Lamon v. Gold,* 72 W.Va. 618, 79 S.E. 728 (1913).[7]

■ Consequently, we conclude that the trial court erred in reducing the judgment to $8,125. A proper calculation would be to take the date upon which suit was filed, May 24, 1988, and compute the alimony accrued during the previous ten years. The wife will also be entitled to statutory interest on each of the unpaid installments from the date the payment matured to the date the total judgment is rendered. This comports with Syllabus Point 5 of *Goff v. Goff, supra:*

> "Mature alimony and child support installments are judgments for money which accrue statutory interest from the date the payments are due."

Our reasoning in *Goff* was that decrees for support or alimony are monetary judgments which, under W.Va.Code, 56-6-31 (1981), bear interest from the date thereof.[8] Thus, the wife is entitled to interest calculated on the amounts as each accrued until the date of final judgment.

---

4. The full text of Syllabus Point 2 of *Goff* is:

"The authority of the circuit courts to modify alimony or child support awards is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a circuit court is without authority to modify or cancel accrued alimony or child support installments."

5. We have utilized the doctrine of laches in *Hartley v. Ungvari,* 173 W.Va. 583, 318 S.E.2d 634 (1984). There, the husband had not been personally served in the divorce action. Some nine years later, the wife obtained personal service and sought reimbursement of past support expenses. We held that laches barred the suit because the wife had a number of opportunities to obtain personal service during the nine-year period. In this case, personal service was originally obtained and the husband neither paid nor sought modification of the court-ordered alimony.

6. This judgment execution statute, W.Va.Code, 38-3-18, is to be distinguished from the lien statute of limitations, W.Va.Code, 55-2-5 (1972), which we discussed in *Miller v. Diversified Loan Serv. Co.,* 181 W.Va. 320, 382 S.E.2d 514 (1989).

7. *Lamon v. Gold* recognized that under the provisions of W.Va.Code, 38-3-19, the ten-year period may be extended under the specific exceptions noted therein even though an execution is not issued. No argument is made as to the applicability of this section.

8. The applicable portion of W.Va.Code, 56-6-31 (1981), is:

"Except where it is otherwise provided by law, every judgment or decree for the payment of money entered by any court of this State shall bear interest from the date thereof, whether it be so stated in the judgment or decree or not.... The rate of interest shall be ten dollars upon one hundred dollars per annum, and proportionately for a greater or lesser sum, or for a longer or shorter time, notwithstanding any other provisions of law."

We have recognized that before the 10 percent rate was set in 1981, the appropriate rate was 6 percent per annum. *See Weimer–Godwin v. Board of Educ.,* 179 W.Va. 423, 428, 369 S.E.2d 726, 731 (1988); Syllabus Point 7, *Bell v. Inland Mut. Ins. Co.,* 175 W.Va. 165, 332 S.E.2d 127, *appeal dismissed sub nom., Camden Fire Ins. Ass'n v. Justice,* 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985).

## II.

The wife's final assignment of error concerns the circuit court's termination of the husband's future alimony obligation. We hold that the termination of the alimony without specific factual findings on the issue was improper and remand for a hearing and appropriate findings. We have consistently required, as illustrated by Syllabus Point 3 of *Witte v. Witte*, 173 W.Va. 281, 315 S.E.2d 246 (1984), that the trial court must make appropriate findings of fact and conclusions of law to justify its decision:

> "Rule 52(a) of the West Virginia Rules of Civil Procedure requires a trial court in a divorce proceeding to state on the record findings of fact and conclusions of law which support its decision. A divorce decree which does not comply with this mandatory requirement may be remanded for compliance."

In both *Burger v. Burger*, 176 W.Va. 416, 345 S.E.2d 18 (1986), and *Kemp v. Kemp*, 175 W.Va. 135, 331 S.E.2d 867 (1985), we found the record to lack sufficient facts to determine how the trial court arrived at its alimony award. The obvious rationale for this rule is that "effective review by this Court cannot be exercised unless the findings reflect the bases for the trial court's conclusions." *Burger*, 176 W.Va. at 418, 345 S.E.2d at 20.

Here, the court simply noted that it was of the opinion that alimony should be terminated, ordered the termination, and stated that this would "forego additional hearings and delay." In effect, there was a naked termination of the wife's alimony without any reason being given. Although judicial efficiency and economy are desirable, we cannot condone their accomplishment at the expense of our procedural requirements.

For the reasons stated, the order of the Circuit Court of Ohio County is reversed, and this case is remanded for further proceedings not inconsistent with this opinion.

Reversed and Remanded.